**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ENVOY TECHNOLOGIES, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 19-13976 (FLW) |
| v. | : | |
| | : | **OPINION** |
| NORTHROP GRUMMAN CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**WOLFSON, Chief Judge**:

Plaintiff Envoy Technologies Inc. ("Plaintiff" or "Envoy") brings this copyright infringement action against Defendant Northrop Grumman Corporation ("Defendant" or "Northrop"), for engaging in the alleged unauthorized use of a computer software product that Plaintiff owns. Pending before the Court is Defendant's Motion to dismiss Plaintiff's First Amended Complaint ("FAC" or the "Amended Complaint"), wherein Plaintiff asserts five causes of action, including: (1) fraud; (2) infringement under United States and United Kingdom laws; (3) breach of contract; (4) misappropriation; and (5) unjust enrichment.[1] For the reasons expressed herein, Defendant's Motion to dismiss is **GRANTED** as to the claims for fraud, misappropriation, and unjust enrichment, and its improperly pled claims under United Kingdom

---

[1] Plaintiff has filed multiple sur-replies in connection with Defendant's Motion to dismiss. Despite claiming that these are required to address certain factual inaccuracies that Defendant has made, Plaintiff raises various arguments that could have been included in its original opposition papers. Although this does not constitute a proper basis for the submission of Plaintiff's sur-replies, I have, nevertheless, considered them in resolving the parties' instant dispute.

law are dismissed without prejudice, but **DENIED** as to the infringement and breach of contract causes of action.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are drawn from the FAC and are assumed to be true for the purpose of this Motion. Plaintiff, a Delaware corporation, owns a software product known as XIPX.[2] FAC, ¶ 5. Defendant is incorporated in Virginia, with a principle place of business in Virginia and the United Kingdom, and it "sells, licenses, and supports various computer hardware and software systems and services" to various private and governmental entities throughout the world. *Id*. at ¶¶ 6-7.

The Amended Complaint describes a series of transactions that transpired before Plaintiff obtained an ownership interest in XIPC. In particular, according to the documents that are attached as an exhibit to the pleadings,[3] Momentum Corporation ("Momentum") is the creator and owner of the original registered copyrights in XIPC. *See id.* at ¶ 9, Ex. A. However, "[i]n or about 1998," Level 8 Technologies, Inc. ("Level 8") acquired XIPC, "and Momentum executed a written contract that assigned ownership of the copyrights" to Level 8. *Id*. at ¶ 9. Thereafter, "[i]n or about February 2002," Envoy acquired XIPC, and then Level 8 "executed a written

---

[2]      Plaintiff alleges that XIPX is "comprised of a large number of modules and libraries, which together, make up an advanced software toolset for the development of multitasking and distributed enterprise applications. XIPC provides fault-tolerant management guaranteed delivery and real-time message queuing, translation services, and other related messaging services." FAC, ¶ 5.

[3]      On a motion to dismiss, a court can consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon the documents." *Logan v. Bd. of Educ. of the Sch. Dist. of Pittsburgh*, 742 Fed. Appx. 628, 631-32 (3d Cir. 2018) (quoting *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016)).

assignment assigning the copyrights" to Plaintiff, which has since owned the copyrights in XIPC. *Id*.

In 2005, Plaintiff and Defendant entered into a three-year licensing agreement, pursuant to which Defendant was permitted to "use and sublicense the XIPC software in specific Northrop supplied systems." *Id*. at ¶ 11. The licensing agreement included a three-year renewal option, which the parties exercised in 2008, but with updated financial provisions. *Id*. at ¶¶ 11-12. During this specific timeframe, Defendant "remitted annual usage fees for the XIPC software," and, in exchange, Plaintiff provided "support, bug fixes and upgrades in accordance with" the parties contract. *Id*. at ¶ 13. Moreover, according to Plaintiff, Northrup "used the [XIPC] software and made copies of it in Virginia," and also integrated the product into "at least the National Automation Finger Identification System," and into another program, "known as IDENTI," "both of which were licensed to one or more entities in the United Kingdom or elsewhere." *Id*. at ¶ 15.

In 2011, Defendant informed Plaintiff that it was no longer interested in utilizing the XIPC software in its own products, and thus, the parties' licensing agreement was not renewed. *Id*. at ¶ 18. Moreover, Defendant allegedly explained that it would remove and replace the XIPC software from Northrop's operating platforms with an unspecified "competitive messaging system" before June 2011, in order to avoid increased usage fees that Defendant would have otherwise incurred. *Id*. at ¶¶ 18-20. Notwithstanding these alleged representations, Plaintiff claims that Defendant "continued to use components of the XIPC software at its offices in Virginia," from where Defendant also authorized the product's improper use overseas, in its United Kingdom offices. *Id*. at ¶ 22. And, according to the FAC, Defendant has "since further expanded its use . . . of the XIPC software into fields and systems that are outside of those"

which were set forth in the parties' agreement, "and that [Plaintiff] would not have licensed for its normal fees, if at all[.]" *Id*. at ¶ 24.

On June 19, 2019, Plaintiff filed the instant suit against Defendant, as a result of the alleged improper and unauthorized use of the XIPC software. On September 1, 2019, Plaintiff filed an Amended Complaint, asserting infringement claims under the laws of the United States and United Kingdom, in addition to four common law causes of action. In the instant matter, Defendant moves to dismiss Plaintiff's FAC, first arguing that Plaintiff has not pled a proper infringement claim. Second, Defendant contends that federal preemption bars Plaintiff's state law claims, and that, as an independent basis, Plaintiff has not stated a viable claim for breach of contract and unjust enrichment. Third, Defendant maintains that this Court lacks jurisdiction to adjudicate the remaining claims under the laws of the United Kingdom. Plaintiff opposes the Motion.

## II.   DISCUSSION

### A.     STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a dismissal motion, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). Under this standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (quotations and citations omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation, quotations, and bracketsomitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (citations and quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (citations, quotations and brackets omitted); *Robinson v. Family Dollar, Inc.*, 679 Fed. Appx. 126, 132 (3d Cir. 2017).

### B.     INFRINGEMENT

First, Defendant moves to dismiss Count II of the FAC—an infringement claim arising from Northrop's alleged unauthorized use of the XIPC software. FAC, ¶ 35. To assert such a claim, a litigant is required to allege the following elements: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Services, Inc. v. Grace Consulting*, 307 F.3d 197, 206 (3d Cir. 2002); *see Feist Pub'lns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Moreover, it is axiomatic that the "[o]wnership of a copyright is freely transferrable by 'any means of conveyance or by operation of law.'" *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 827 (3d Cir. 2011) (quoting 17 U.S.C. § 201(d)); *see Day to Day Imps., Inc. v. FH Group Int'l, Inc.,* No. 18-14105, 2019 U.S. Dist. LEXIS 110081, at *7 (D.N.J. July 2, 2019) (citation omitted).

At the outset, I note that Defendant does not contest that the element of unauthorized use has been adequately pled; rather, the instant dispute centers on whether Plaintiff has sufficiently pled ownership of the XIPC software. On that issue, Plaintiff points to Exhibit A of the pleadings, which includes two Certificates of Recordation ("Registrations") that Momentum, as the then-current owner of XIPC, filed in 2000 with the United States Copyright Office. *See* FAC, ¶ 9, Ex. A. Moreover, Plaintiff avers that it acquired the rights to XIPC through a series of transactions that are alleged in Paragraph 9 of the FAC: "[i]n or about 1998, XIPC was acquired by Level 8 Technologies, Inc. and Momentum executed a written contract that assigned ownership of Ex. A to Level 8 Technologies, Inc. In or about February 2002, XIPC was acquired by Envoy, and Level 8 Technologies, Inc. executed a written assignment assigning the copyrights of Ex. A to Plaintiff Envoy, which [owns] said . . . registrations[.]" *Id*. at ¶ 9. However, Defendant argues that based on the timing of the relevant transactions, Plaintiff cannot be the record owner of XIPC.

Specifically, Defendant argues that, because the Amended Complaint alleges that an assignment between Momentum and Level 8 occurred in 1998, Level 8 could not have transferred the rights in XIPC to Plaintiff through the subsequent assignment in 2002, since the attached Registrations affirm that Momentum still owned the product in 2000. Defendant's Dismissal Motion ("Def.'s Moving Brief"), at 15-16. However, Plaintiff contends that, although not specifically alleged, the Amended Complaint asserts that Momentum entered into an assignment agreement with Level 8 *after* the date on which the attached Registrations were filed, *e.g.*, 2001. Thereafter, according to Plaintiff, it acquired the rights in XIPC from Level 8 through the subsequent assignment in 2002.

Here, while Paragraph 9 of the Amended Complaint is arguably vague, I nevertheless find that, under the liberal pleading standard, the FAC and the exhibits attached, support Plaintiff's version of events. However inartful, the disputed language in Paragraph 9 of the Amended Complaint can be interpreted to assert three separate transactions: (1) Level 8 acquired Momentum in 1998; (2) on an unspecified date, Momentum transferred the rights in XIPC to Level 8 through the execution of an assignment agreement; and (3) in 2002, Level 8 executed a written assignment transferring the rights in XIPC to Plaintiff.[4] *See* FAC, ¶ 9. As such, based on these allegations, the Court can draw the reasonable inference that the initial assignment between Momentum and Level 8 occurred after the Registrations were filed in 2000, but before the subsequent assignment between Level 8 and Plaintiff in 2002. *See Langford v. City of Atlantic City*, 235 F.3d 845, 850 (3d Cir. 2000) (in considering the factual allegations that are contained

---

[4]     Defendant cites to *Barefoot Architect, Inc.* for the proposition that an assignment "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." *Barefoot,* 632 F.3d at 827. However, these documents are not required at the current stage of the pleadings; rather, Plaintiff can assert its alleged ownership through the allegations in the Amended Complaint.

in the pleadings on a motion to dismiss, the reviewing court "must . . . draw all reasonable inferences in the light most favorable to the plaintiffs."). Indeed, Plaintiff would not have otherwise entered into the subsequent assignment agreement with Level 8, unless Level 8 had first acquired the registered rights in XIPC through an assignment from Momentum. Moreover, irrespective of the temporal dispute that Defendant raises, Plaintiff has asserted ownership over a valid, registered interest in XIPC, and that Defendant paid a significant annual usage fee to use and sublicense the software for six years. These alleged facts and circumstances provide further support for Plaintiff's alleged ownership of XIPC, and therefore, Defendant's Motion to dismiss Count II is denied.[5] I next address whether the Act preempts the state law claims alleged in the FAC.

### C.    PREEMPTION

Defendant contends that the Act preempts Plaintiff's fraud, breach of contract, misappropriation, and unjust enrichment claims, as alleged in Counts I, and III-V of the FAC. According to Defendant, those causes of action are based on the same factual allegations that underlie Plaintiff's infringement claim, *i.e.*, Northrop's alleged unauthorized use of XIPC. Def.'s Moving Brief, at 7.

The Act contains an express preemption provision, stating: "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are

---

[5]    Plaintiff provides a Certification that includes public filings that Level 8 has submitted to the Securities and Exchange Commission. *See* Declaration of Jeffrey I. Kaplan (dated October 22, 2019). While the Court's findings are not based on the contents of these documents, I nonetheless note that an annual Form 10-K ending December 31, 2001, states that Level 8 acquired Momentum "for its XIPC messaging product," and thereafter, "[d]uring the quarter ended September 30, 2001," sold "Geneva XIPC to Envoy[,]" which acquired "all rights, title and interest to the product." *Id.*, ¶ 2, Ex. B.

governed exclusively by this title." 17 U.S.C. § 301(a). Among the rights specified in Section 106 are the rights "(1) to reproduce the copyrighted work in copies . . . (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106.

Determining "whether a state claim is preempted requires a two-part analysis. First, the court must ascertain whether the subject matter requirement is met; that is, whether the work at issue is of the type that generally falls within the protection of the Copyright Act. Second, the court must decide if the state law creates rights equivalent to those protected by federal copyright law. This is known as the general scope requirement." *Torah Soft, Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 716 (S.D.N.Y. 2002); *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 563-54 (D.N.J. 2002); *see also Lennon v. Seaman*, 63 F. Supp. 2d 428, 435 (S.D.N.Y. 1999); *Brignoli v. Balch Hardy and Scheinman, Inc.*, 645 F. Supp. 1201, 1204-05 (S.D.N.Y. 1986); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 766-67 (N.D. Tex. 2006).

Because the parties do not contest that XIPC is a "software toolset" that falls within the protection of the Act, preemption in this case turns on the second-prong of the test. *See Expediters Int'l v. Direct Line Cargo Mgmt. Servs.*, 995 F. Supp. 468, 479 (D.N.J 1998) ("It is well established that computer programs fall within the subject matter of copyright."); *Apple Computer Inc. v. Franklin Computer Co.*, 714 F.2d 1240 (3rd Cir. 1983); *see also National Car Rental System, Inc. v. Computer Associates Int'l., Inc.*, 991 F.2d 426, 431 (8th Cir. 1993); *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir. 1992); *Architectronics, Inc. v. Control Systems, Inc.*, 935 F. Supp. 425, 438 (S.D.N.Y. 1996); *Unix Sys. Labs., Inc. v.*

*Berkeley Software Design, Inc.*, No. 92-1667, 1993 U.S. Dist. LEXIS 19505, at *44 (D.N.J. Mar. 3, 1993).

Under the second-prong, the Third Circuit has explained that "[t]he presence of an 'additional element' required to state a cause of action under state law, beyond what a copyright-infringement claim would require, renders the state-law cause of action not equivalent to a copyright." *Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1027 (3d Cir. 2008) (citation omitted); *see Dun & Bradstreet Software Servs.*, 307 F.3d at 218 ("[I]f a state cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim . . . .") (citation omitted).

Before turning to the state law causes of action, I first address a threshold argument that Plaintiff raises. In particular, Plaintiff clarifies that the FAC alleges that Northrop engaged in three different infringing activities: "1) copying the XIPC software; 2) copying the XIPC software in the United Kingdom; and 3) authorizing, from its offices in Virginia, its employees to copy the XIPC software in the United Kingdom." Plaintiff's Opposition ("Pl.'s Opp."), at 9. As to third alleged conduct, Plaintiff quotes § 106, which provides an "owner" with the right "to do and to authorize" reproduction of work, and argues that authorizing "from the United States, copying to take places overseas," is an actionable form of infringement under the Act. *Id*. In contrast, according to Plaintiff, the protections of the Act do not encompass infringing activities that occur abroad, and thus, Northrop's conduct in the United Kingdom, which was not authorized from its Virginia offices, is not subject to the statute's preemption provision. Rather, those alleged infringing activities, Plaintiff argues, implicate common law claims and the laws of the United Kingdom. I disagree.

Here, regardless of whether Plaintiff has provided an accurate description of the law, the FAC fails to allege that Northrop engaged in three different infringing activities. Paragraphs 38 and 39 of the pleadings, upon which Plaintiff relies in support of its position, state: "Northrop has, and is continuing to, infringe Envoy's United States Copyrights through its use of the XIPC-DTS software in Virginia, and its authorization from Virginia to use the XIPC-DTS software in the United Kingdom. Northrop also has, and is continuing to, commit copyright infringement in the United Kingdom under United Kingdom law, through its direct support of, and use of, the XIPC software at locations in the United Kingdom." FAC, ¶¶ 38-39. As such, Plaintiff's claims arise from two of Defendant's alleged actions: (1) its unauthorized use of XIPC in Virginia, and (2) its improper authorization from Virginia to continue utilizing the product overseas, in violation of both United States and United Kingdom laws. In that connection, the claimed conduct that occurred in the United Kingdom is alleged within the context of the activities that Defendant authorized from its offices in Virginia. Indeed, no allegations in the FAC assert that Defendant's purported conduct abroad transpired without the express authorization from an office in the United States. Therefore, even if the Act does not preempt conduct that occurs wholly outside of the United States, Plaintiff fails to allege these particular facts in the pleadings.[6] I next address whether Plaintiff's state law claims are preempted under the provisions of the Act.

---

[6]     In its opposition brief, Plaintiff admits as follows: "[b]ased upon the evidence that Envoy has gathered to date, Envoy believes the overwhelming majority, and possibly all, of the infringing activity, was performed in Virginia, and that any small portion not performed in Virginia, was likely authorized from Virginia. Indeed, over the years that Northrop was licensed, "[t]he XIPC software . . . [was] shipped to, and used in, the Virginia office of Northrop. Thus, Envoy presently believes that after some discovery, most if not all of Northrop's infringing activity will be actionable under the Copyright Act, and there will likely be no issues of foreign law in this case." Pl.'s Opp., at 12. These contentions provide further support for the Court's findings in this context. Nonetheless, to the extent that the exchange of discovery reveals

###### i. *Breach of Contract*

Beginning with the breach of contract claim, I note that the Third Circuit has not had the occasion to determine if the Act preempts such actions.[7] Nonetheless, most federal appellate courts that have considered this issue have held that the statute does not preclude a contractual constraint on a registered work, if the contractual obligations sought to be enforced are beyond mere unauthorized use. *See, e.g.*, *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) (holding that a licensing agreement was not preempted, and reasoning that "[a] copyright is a right against the world. Contracts, by contrast, generally affect only their parties[.]"); *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1318-19 (11th Cir. 2001) (concluding that a breach of contract claim was not preempted, because "[t]he rights sought to be enforced in [the] breach of contract claim are not equivalent to the exclusive rights of § 106 . . . ."); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 431-32 (8th Cir. 1993) ("[T]he contractual restriction on use of the programs constitutes an additional element making this cause of action not equivalent to a copyright action"); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) ("[T]his action for breach of contract involves an element in addition to mere reproduction, distribution or display: the contract promise made by Taquino, therefore, it is not preempted".); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) (reversing the lower court's finding of preemption, because the alleged breach of contract claim was not within

---

unauthorized conduct that occurred entirely in the United Kingdom, Plaintiff may seek leave to reallege its claims.

[7]     Defendant references *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, No. 06-140, 2008 U.S. Dist. LEXIS 56871, at *119 (D.N.J. July 28, 2018), a prior case that I decided. There, I found that the plaintiff's breach of contract claim was preempted under the Act, because it did not seek to enforce something more than what the statute was intended to protect against. However, because that case did not involve a claim for unpaid contractual fees, it does not control here.

the subject matter of the Act, but instead arose out of implicit contractual provisions of the agreement).

Relevant here, federal circuit and district courts have found that a contract can create rights that differ from rights that are protected under the Act, when the agreement includes, for example, a promise to provide certain bargained-for compensation for the use of a registered work. *See e.g.*, *Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012) ("A claim for breach of a contract including a promise to pay is qualitatively different from a suit to vindicate a right included in the Copyright Act and is not subject to preemption."); *Montz v. Pilgrim Films & TV, Inc.*, 649 F.3d 975, 977 (9th Cir. 2011) ("[W]e ha[ve] also recognized a claim for breach of contract [is] not preempted where the plaintiff establishes he had a reasonable expectation of payment for use.") (citation omitted); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001) ("The extra element [in a breach of contract action] is the promise to pay. This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim."); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1127 (N.D. Ca. 2001) ("[A] promise to pay for a work constitutes an extra element such that a breach of contract claim is not preempted by section 301. It is not the use of the work alone but the failure to pay for it that violates the contract and gives rise to the right to recover damages."); *Tartan Software, Inc. v. DRS Sensors & Targeting Sys.*, No. 06-1147, 2007 U.S. Dist. LEXIS 75657, at *14 (W.D. Pa. Oct. 11, 2007) ("[T]he [p]laintiff alleges that [the contract] includes a promise . . . to pay a sublicense fee which was never collected. This promise to pay constitutes a right that has no equivalent under the Copyright Act, and, as such, is not preempted[.]"). Therefore, the contractual promise to provide compensation may constitute the

"additional element" required to avoid preemption under the Act. *See Facenda,* 542 F.3d at 1027.

As a threshold issue, the parties dispute whether the pleadings allege a viable breach of contract claim. Defendant contends that Plaintiff's breach of contract claim cannot stand, because the parties' agreement expired before Northrop committed an alleged breach. Def.'s Moving Brief, at 12-13. However, Plaintiff contends that the parties' agreement included a post-termination provision that Defendant violated through the continued use of XIPC. Pl.'s Opp., at 25. According to Plaintiff, the post-termination provision prohibited Defendant from using the licensed software after the agreement expired, unless additional compensation was paid, in the amount of a pre-determined software usage fee. FAC, ¶ 42. Thus, in resolving this dispute, the Court must consider whether the alleged provision is intended to survive the expiration of the parties' agreement, based on the language of the contract. *See United Steelworkers of America v. American Smelting & Refining Co.*, 648 F.2d 863, 876, (3d Cir. 1981) (determining whether a contractual obligation survives expiration of a contract "depends solely upon the parties' intentions and whether they are expressed in the contract.").

Here, the factual assertions in the Amended Complaint are sufficient to allege a breach of a post-termination obligation. Although the licensing agreement is not provided as an exhibit, the FAC alleges that, in 2008, the parties renewed the contract for an additional three-year period. FAC, ¶ 12. Moreover, the pleadings assert that, under the terms of the renewed agreement, Northrop was precluded from using the licensed software after the contract expired if a pre-determined usage fee was not paid. *Id*. at ¶ 42. Notwithstanding that provision, Plaintiff alleges that Northrop continued to utilize the licensed software after the contract expired without payment of the pre-determined usage fees. *Id*. at ¶ 43. Under a liberal reading of the FAC,

Plaintiff has asserted a plausible basis to find that, after the contract expired, Defendant was required to cease use of the licensed software, unless a pre-determined usage fee was paid. Thus, because Plaintiff asserts that Defendant continued to use the software despite failing to provide those fees, Northrop's alleged actions constitute a breach of the agreement.

Indeed, district courts have rejected the exact argument that Defendant raises here, finding that the continued use of a licensed product after the expiration of a governing contract results in a breach. *See, e.g., CustomGuide v. CareerBuilder, LLC*, No. 11-945, 2011 U.S. Dist. LEXIS 132166, at *6 (N.D. Ill. Nov. 11, 2015) (rejecting the defendant's argument that, because the agreement had expired, the plaintiff could not "maintain a breach of contract action for [the defendant's activities after that date," and holding that "all licensing agreements contemplate an action for breach of contract if the licensee continues to use the licensed material after the license expires."); *Software for Moving, Inc. v. Frid*, No. 09-4341, 2010 U.S. Dist. LEXIS 53289, at *13 (S.D.N.Y. May 27, 2010) (finding a breach where the pleadings alleged that the parties entered into a licensing agreement, pursuant to which the defendant paid the plaintiff to use a licensed software "for a definite period of time[,]" but that, "[a]fter the license expired . . . [the defendant] allegedly continued to use [the licensed product] without compensating" the plaintiff); *see also* Raymond T. Nimmer & Jeff Dodd, Modern Licensing Law §11:26 (rev. 2011) ("A licensee that continues to use the subject matter after the license ends breaches the contractual agreement . . . the licensee was obligated to discontinue use or return the subject matter at the end of the contract term.").

Moreover, in bringing a breach of contract claim, Plaintiff seeks to enforce a right beyond a protected right under the Act, *i.e.*, the unauthorized use, reproduction, or distribution of a

registered work.[8] As stated, Plaintiff contends that Northrop has failed to remit a pre-determined usage fee that was required for the continued use of the software, after the duration set forth in the parties' agreement. In that connection, Plaintiff asserts a breach of contract claim that arises from Northrop's alleged promise to provide an agreed upon usage fee which was never collected. Thus, the Act does not bar Plaintiff's cause of action, because, as the case law cited above illustrates, the alleged unpaid usage fee which Defendant agreed to provide constitutes an "additional element" that suffices to circumvent preemption. *See Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1205 (S.D.N.Y. 1986) ("Nevertheless, [the] plaintiffs' . . . breach of contract claims . . . involve an element beyond unauthorized reproduction and use—a promise to pay plaintiff for use of his product."); *Tartan Software, Inc. v. DRS Sensors & Targeting Sys.*, No. 06-1147, 2007 U.S. Dist. LEXIS 75657, at *14 (W.D. Pa. Oct. 11, 2007) ("[T]he [p]laintiff alleges that the [parties' contract] includes a promise . . . to pay a sublicense fee which was never collected. This promise to pay constitutes a right that has no equivalent under the Copyright Act, and, as such, is not preempted by the statute.").[9]

---

[8]     I note that allowing Plaintiff's infringement and breach of contract claims to proceed at the same time will not necessarily result in a double recovery. Indeed, Plaintiff can seek to recover different kinds of damages under both claims, including actual damages as a result of Defendant's alleged contractual breach of the licensing agreement, and, on the other hand, statutory damages, attorney's fees, or disgorgement damages pursuant to the Act. *See* 17 U.S.C. § 504(c).

[9]     I emphasize that Plaintiff's breach of contract claim cannot succeed, unless the licensing agreement includes a post-termination obligation that requires Defendant to remit a pre-determined usage fee, in order to continue using the licensed software. Indeed, in the absence of such a provision, Plaintiff cannot allege a breach of contract claim arising from the alleged unauthorized use of XIPC. Rather, in that case, Plaintiff's sole relief would lie under the provisions of the Act. *See Marshall v. New Kids on Block P'ship,* 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) (explaining that "a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license," and that, under such circumstances, "the action arises under the copyright laws just as if the claim were against any other infringer who is a stranger to the plaintiff.") (citation omitted).

### ii.  Fraud

To avoid preemption, Plaintiff's fraud claim must allege a right that is not protected under the Act. *See Video Pipeline, Inc*, 210 F. Supp. 2d at 566 ("A state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement [c]laim.") (quoting *Expediters Int'l of Washington, Inc. v. Direct Line Cargo Mgmt. Svcs., Inc.*, 995 F. Supp. 468, 479-80 (D.N.J.1998)); *Jarvis v. A & M Records*, 827 F. Supp. 282, 297 (D.N.J. 1998) ("It is settled law that a right is equivalent to copyright if it is infringed by the mere act of reproduction, performance, distribution or display."); *Winstead v. Jackson*, No. 10-5783, 2011 U.S. Dist. LEXIS 107560, at *11 (D.N.J. Sept. 20, 2011) (the plaintiff's state claims must "create rights which are [not] 'equivalent to' any of the exclusive rights granted to the copyright holder under § 106.").

In the FAC, Plaintiff alleges that, in or about 2011, Northrop represented that it "was no longer interested in utilizing the XIPC software . . . and that it would thus not be renewing the contract[.]" FAC, ¶ 18. However, notwithstanding these alleged statements, Plaintiff claims that "Northrop continued to use components of the XIPC software at its office in Virginia, and also, continued its use in overseas systems," including in its offices in the United Kingdom. *Id*. at ¶ 22. These allegations are duplicative of the allegations which Plaintiff has pled in support of its infringement claim, as that cause of action also arises from Northrop's "continued . . . use . . . of the XIPC software since approximately 2011 without license from" Plaintiff. *Id*. at ¶ 35. Indeed, Plaintiff's fraud and infringement claims are both based on Defendant's alleged unauthorized continued use of a licensed product, and thus, the cause of action for fraud is preempted. *See e.g., Giddings v. Vision House Prod.*, No. 05-2963, 2007 U.S. Dist. LEXIS 58438, at *7 (D. Ariz. May 28, 2008) (finding that the Act preempted the plaintiff's fraud claim, where the alleged

supporting misrepresentation was not "based on a core of allegations dissimilar from those on which the copyright infringement claim [was] based."); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592, 595 (D. Md. 2002) (holding that the Act preempted a fraud claim that was "qualitatively no different" from the plaintiff's claims under the statute).

Moreover, Plaintiff's reliance on *Bean v. McDougal*, 538 F. Supp. 2d 1196 (D. Ariz. 2008) is misplaced. The court, in that case, determined that the plaintiff's cause of action for fraud was not preempted under the Act, on the basis of reasoning set forth in a Ninth Circuit decision:

> In *Valente-Kritzer*, the Ninth Circuit held that *intentionally misrepresenting one's intent to perform a contract at the time the contract is formed* is 'not substantially equivalent to [the] claim for copyright infringement.' The court stated that this particular misrepresentation is a sufficient extra element to distinguish a fraud claim from a copyright action.  Here, Bean specifically alleges that at the time of licensing McDougal falsely represented that it sought to print only 45,000 copies of the photograph because McDougal knew that its actual use would greatly exceed that number.

*Id*. at 1200. (quotations and citations omitted). Unlike *Bean*, however, Plaintiff's claims, here, arise not from the purported misrepresentations that were made at the time the contract was formed, but rather from Northrop's assurances that it had stopped using the licensed software, *i.e.*, representations that were made after the licensing agreement expired, once the parties contractual relationship ceased. Thus, because the facts set forth in *Bean* are distinguishable, that decision is not helpful to Plaintiff's position.

In addition, although Plaintiff's contends that Northrop's alleged misrepresentations "led to a new contract" between the parties, its arguments in this regard lack merit. In particular, Plaintiff maintains that negotiations between the parties ensued after Northrop indicated that it would no longer use XIPC. Further, according to Plaintiff, those alleged representations created

an additional "and different contract for winding down the relationship," which Northrop breached as well. Pl.'s Opp. at 27. However, as a threshold matter, this position conflicts with Plaintiff's theory of the case. Indeed, Defendant's alleged unauthorized use either violated the parties' 2011 licensing agreement, or a later agreement which resulted from the parties' claimed negotiations after the contract expired, not both. In fact, the pleadings make no mention that the parties' negotiations created a subsequent contract, other than the 2011 licensing agreement. Rather, for the first time, Plaintiff presents new allegations in his briefings and discusses the existence of a new contract. However, it is axiomatic that a litigant is precluded from amending a complaint through its briefs. *See Commw. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). I do not credit these newly minted allegations, and preemption applies to Plaintiff's fraud clam.[10]

### iii.  Misappropriation and Unjust Enrichment

Plaintiff's remaining claims for misappropriation and unjust enrichment are also preempted. Indeed, Plaintiff does not raise any argument as to why these claims can proceed along with its copyright infringement claim. And, of more importance, the pleadings reveal no difference between the factual assertions in support of the misappropriation and unjust

---

[10]    Even if preemption is inapplicable, I find that Plaintiff's fraud fails under the economic loss doctrine. "The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995). Here, Plaintiff's breach of contract and fraud causes of action arise from, and seek damages for, the same alleged conduct, *i.e.*, Defendant's failure to provide usage fees despite its continued use of XIPC. Thus, the economic loss doctrine serves to bar Plaintiff's fraud claim. *See Unifoil Corp. v. Cheque Printers & Encoders Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (finding that courts have "construed the law of New Jersey to prohibit fraud claims when the 'fraud contemplated by the plaintiff . . . does not seem to be extraneous to the contract, but rather on fraudulent performance of the contract itself.'") (quoting *Foodtown v. Sigma Marketing Systems, Inc.*, 518 F. Supp. 485, 490 (D.N.J. 1980)).

enrichment causes of action and Plaintiff's claim for infringement. In particular, as to the claims for misappropriation and unjust enrichment, Plaintiff avers that Northrop's alleged "use" of the licensed software occurred "without permission," while Plaintiff's infringement claim, too, arises from Defendant's alleged use of the licensed software without having secured a "license or permission" from Plaintiff. FAC, ¶¶ 35, 45-50. Therefore, because the misappropriation and unjust enrichment claims are duplicative of Plaintiff's claim for infringement, I find that the Act preempts those causes of action.

Indeed, federal courts often hold that the Act preempts unjust enrichment claims. *See Collegesource, Inc. v. Academyone, Inc.*, 597 Fed. Appx. 116, 128 (3d Cir. 2015) ("Federal courts have routinely held that claims of unjust enrichment are pre-empted under § 106 where the claim rests on an allegation that the defendant has secured a benefit due to the plaintiff under the Copyright Act.") (citation omitted); *Video Pipeline, Inc.*, 210 F. Supp. 2d at 567  ("Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted.") (collecting cases); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 462 (S.D.N.Y. 1999) (citation omitted); *see also Praxis Communs. Network, LLC v. GlaxoSmithKline, PLC*, No. 15-2733, 2017 U.S. Dist. LEXIS 151066, at *18 n.9 (D.N.J. Sept. 14, 2017); *Boyd v. Tribbett*, No. 14-5671, 2015 U.S. Dist. LEXIS 89731, at *20 (D.N.J. July 10, 2015); *Winstead v. Jackson*, No. 10-5783, 2011 U.S. Dist. LEXIS 107560, at *9 n.4 (D.N.J. Sept. 20, 2011).

In addition, district courts have reached the same conclusion within the context of a misappropriation action. *See Video Pipeline, Inc.*, 210 F. Supp. 2d at 552 ("Misappropriation . . . is grounded in the alleged unauthorized copying and use of another's copyrighted expression,

and thus fails the extra element test."); *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 812 n.5 (D.N.J. 2002) ("To the extent a state's misappropriation law purports to impose liability for the misappropriation of an idea's expression, such a law would be preempted by federal copyright law.") (citations omitted); *see also Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993) (finding that a misappropriation claim that is "grounded solely in the copying of a plaintiff's protected expression" was preempted by the Act), *cert. denied*, 510 U.S. 1112 (1994); S*cranton Times, L.P. v. Wilkes-Barre Publ. Co.*, No. 08-2135, 2009 U.S. Dist. LEXIS 87261, at *16 (D.N.J. Sept. 23, 2009) (holding that the plaintiff's misappropriation claim does not contain any extra elements from a claim of copyright infringement[,]" and thus, the claim was "preempted by the Copyright Act.").

### D.    FOREIGN INFRINGEMENT CLAIMS

Finally, Defendant moves to dismiss the foreign infringement claims in the Amended Complaint, arguing that the Court lacks the "power to vindicate violations of British law," Def.'s Moving Brief, at 17, while Plaintiff contends that Northrop's alleged acts of infringement can be adjudicated under the laws of the United Kingdom. Pl.'s Opp., at 6-8. However, Plaintiff's position lacks merit, as the FAC fails to plead a specific foreign law. Rather, Count II of the FAC is pled under the general title, "Infringement Under United States Copyright Rights and Under United Kingdom Copyright Rights," and the factual allegations in that section primarily describe Defendant's alleged conduct that occurred within the United States in violation of the Act. *See* FAC, ¶¶ 33-40. With nothing more, the Court cannot ascertain whether to assert jurisdiction over a foreign claim.[11] Simply put, Plaintiff has not adequately pled a cause of action under United

---

[11]    Indeed, Plaintiff continues to reiterate that "this case is almost entirely about the Copyright Act, and it is highly likely that after discovery is complete, this case will no longer involve any issues of foreign law." Pl.'s Opp., at 8-9; *see ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs*, 785 F. Supp. 854, 866 (1992) ("American courts should be reluctant to

Kingdom law. Should Plaintiff intend to prosecute a claim under United Kingdom law, it must move to amend its Amended Complaint, and then, at that time, it may be appropriate to address jurisdiction.

### III.      CONCLUSION

For the reasons set forth above, Defendant's Motion to dismiss is **GRANTED** as to the claims for fraud, misappropriation, and unjust enrichment, and its cause of action under United Kingdom law is dismissed without prejudice, but **DENIED** as to the infringement and breach of contract claims.

**DATED**:  April 30, 2020

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

enter the bramble bush of ascertaining and applying foreign law without an urgent reason to do so.").